SHIVERS, Chief Judge.
Claimant appeals a workers’ compensation order denying his claim for permanent total disability (PTD) benefits but awarding wage loss benefits from August 1, 1988 through October 30, 1988.
While working in the employer’s (Greyhound’s) maintenance department, claimant fell from a ladder suffering multiple fractures in his heel and a fractured collarbone. The parties stipulated that claimant reached maximum medical improvement June 27, 1988. The employer/carrier (E/C) paid temporary total disability benefits through August 1, 1988 and claimant sought PTD or partial disability benefits after that date. The E/C controverted on the basis that it had offered claimant a job within his medical restrictions. Meanwhile, claimant recorded a fruitless work search from the beginning of August 1988 through April 1989.
In his order, the Judge of Compensation Claims (JCC) denied further wage loss benefits after October 30, 1988 finding that “following the initial proffer of employment, which was rejected for medical reasons, Greyhound Corporation subsequently offered the claimant light duty employment, within his physical capacity ... as testified to by his attending physician, Dr. Cooper, who viewed a video tape depicting the job duties.” The JCC’s findings are not borne out by the record.
The E/C initially offered claimant a job in September 1988. They submitted a description of the job to claimant’s orthopedic surgeon, Dr. Cooper, who rejected it on the basis that it was incompatible with claimant’s physical restrictions. During the hearing, the E/C’s attorney stipulated that the September 1988 job was incompatible.
Claimant testified that he received no other job offer from Greyhound since the September 1988 offer. Mr. Miranda, a rehabilitation specialist hired by the E/C to assist claimant in finding employment, also testified that Greyhound only offered the September 1988 job. Dr. Cooper corroborated these testimonies stating that the September 1988 job offer was the only one for which Greyhound submitted a description for his approval. During cross examination by the E/C’s attorney, the E/C’s attorney, (not Dr. Cooper) said he videotaped a job at one of Greyhound’s subsidiary companies at the airport. He gave Dr. Cooper a description of the videotaped job, much in the form of a hypothetical, and asked if claimant could perform it. Dr. Cooper responded that he believed claimant could do such a job.
*548 Ms. Koral, Greyhound’s payroll manager, also testified. The E/C’s attorney asked her the following question: “Now, I ask you at the present time, as of now or as of tomorrow morning at eight o’clock, is Greyhound willing to take this man back at his old salary and a job he’s physically able to do.” She said “yes.”
We find no evidence in the record to refute what is apparent from the testimonies of claimant, Dr. Cooper, and Mr. Miranda—that after the initial September 1988 job offer, Greyhound made no other job offer to claimant until the day of hearing. Nothing in Ms. Koral’s testimony can be interpreted as an assertion that Greyhound made any other job offers before hearing.
Further, in addition to the JCC’s mistaken belief that Dr. Cooper witnessed a videotape of a job that he felt claimant was able to do, there is nothing in the record linking that video taped job to an actual job offer, i.e., there is no evidence that the videotaped job is the one Ms. Koral had in mind when she said Greyhound would take claimant back; and her testimony is the only evidence that the Greyhound was offering claimant a job for the second time. Moreover, she did not have any job descriptions with her at the hearing. As a result, there is nothing in the record indicating what the nature of Ms. Koral’s offered job is, and thus there is no way of determining whether the job is compatible with claimant’s physical limitations.
These facts serve to distinguish the instant case from Broward County Sheriffs Office v. Williams, 430 So.2d 968 (Fla. 1st DCA 1983) in which this court reversed a PTD finding and required the claimant to make a good faith effort to do the civil bailiff job offered by the employer. The claimant’s doctor in that ease was apprised of the physical requirements of the job and found that claimant was physically capable of doing it. In addition, when the employer asserted for the first time at hearing it would employ the claimant, the JCC continued the hearing to allow the claimant to take the pre-employment exam and attempt the job. This was not done in the instant case.
Accordingly, the JCC’s finding that Greyhound offered claimant a second job any time prior to hearing is unsupported by the record and thus the award limiting wage loss to October 30, 1988 is reversed and the matter is remanded for further findings on claimant’s entitlement to wage loss benefits, in addition to the period already awarded, and the taking of additional evidence if deemed necessary. However, we do not reverse the denial of PTD benefits. The JCC’s denial is supported by Dr. Cooper’s testimony that he felt as early as November 16, 1987, that claimant should try some light work. The record also contains a report from Dr. Kashuk, a podiatrist, in which he states that it is possible for claimant to return to work but on a completely sedentary basis. Since claimant is not PTD, and Greyhound apparently stands ready to employ claimant, then consistent with Broward County Sheriffs Office, claimant is required to make a good faith effort to do the offered job. See also U.S. Foundry & Mfg. Co. v. Serpa, 564 So.2d 559 (Fla. 1st DCA 1990).
Claimant also contends that the JCC erred in failing to reserve jurisdiction to increase claimant’s average weekly wage (AWW) in the event Greyhound fails to continue paying health insurance benefits. At the opening of the hearing, claimant’s attorney expressed concern along these lines because the stipulated AWW excluded health insurance premiums Greyhound continued to pay in claimant’s behalf. His concern was that should Greyhound discontinue those payments, the AWW would have to be increased to reflect that benefit. Towards the end of the hearing the JCC stated that the only thing he could do is reserve ruling on the matter and allow the parties to get the right evidence. He said that it is clear that the stipulated AWW was based on health insurance benefit payments continuing.
The final order does not mention the health insurance benefit at all. Apparently no evidence was provided and there is nothing in the record to indicate that claimant *549 was not provided health insurance coverage at any time prior to hearing. Since the wage loss period that the JCC awarded ended October 30, 1988, and it appears Greyhound paid the health insurance benefit through that time, no adjustment in the AWW is necessary for that award period. However, since we are reversing the denial of wage loss for the period following October 30, the parties should be permitted to offer evidence on this issue if the JCC considers it necessary, e.g., if the health insurance benefit payments were discontinued at some time, and the parties cannot agree to a revised AWW, the JCC should entertain evidence regarding the amount of the benefit and the time of its discontinuance, and determine the appropriate AWW accordingly.
AFFIRMED in part, REVERSED and REMANDED in part.
JOANOS and MINER, JJ., concur.